Good afternoon, your honors. I'm Hugh Whiting. I represent Ridgestone Corporation, and I'll also be arguing on behalf of Ridgestone America's Tire Operations, LLC. Mr. Dalton will argue on behalf of BMW. As we did in our briefing, we've tried to allocate the arguments. I'll be covering certain issues. He'll be covering other issues. Do you reserve any time for rebuttal? I would like to reserve three minutes. Mr. Dalton would also like to reserve rebuttal time. Okay. The first question, in terms of reliance under the New Jersey Fraud Act, Consumer Fraud Act, doesn't require proof for reliance. So does Marcus have to prove that BMW or Bridgestone disclosed the alleged defects? He would not, in other words, does he have to prove that they didn't disclose them, and if they had disclosed them, he wouldn't have leased the car? Your honor, it is correct that the New Jersey Consumer Fraud Act does not require reliance in the sense of a common law fraud claim. It requires, however, for a civil damage claim, proof of a causal connection between the alleged violation and the ascertainable loss alleged. Here that ascertainable loss is the cost of replacement tires, and it requires the proof of causation, a connection, a causal connection between the alleged omission or nondisclosure and the loss of replacement tires. Here, the district court sidestepped that issue and adopted the so-called Barrichello presumption from the New Jersey State Court. It is our position that the district court abused its discretion in adopting that presumption for a number of reasons. First of all, there is no evidence in this record that the information available to the class members is uniform or that they saw uniform statements with uniform alleged omissions. The record also shows clearly that there were many sources of available information from BMW publications to public information and to, for example, the Bridgestone website, which had a clear statement about one of the alleged omissions, repairability of the cars. And so there is no basis in this record to adopt the presumption. More fundamentally, when we're talking about flat tires, the record is undisputed that a tire can go flat for any number of reasons unrelated to a defect. And without establishing what the actual cause of the flat tire is, there's no way to establish causation under the New Jersey Consumer Fraud Act. There's a little more than that, though. Aside from going flat, it's not being able to be fixed. And the fact that you pretty much have to replace the ---- Yes. You don't have to replace it. You have no spare. It's inordinately expensive. Well, Your Honor, let's talk then about the repairability issue. That issue, like the flat tire, is an individual fact question. If you look at the Bridgestone BATO warranty that's in the record at Kurtz 10, what it shows is specifically that the repairability of a tire is a function of the nature of what caused it to go flat. And for a tire to be repairable, there must be a puncture of no larger than a quarter of an inch, and it must be within the tread area of the tire. If you look, for example, at the two tires that the plaintiff has evidence about, one was damaged by a large chunk of metal, finger-sized chunk of metal. The other had damage through a large puncture in the sidewall of the tire. Neither of those tires is repairable under any standard. That is true whether the tire is run-flat or conventional. And whether or not repairability is ever relevant to a claim of damages here requires an individual inquiry. If the tire was not repairable, then the question of repairability can't be relevant to the damage. Well, are any tires really repairable if they go flat? Some tires, under certain circumstances, very limited circumstances, if they have, including run-flat tires, including the tires in this class, if they have a puncture of less than a quarter of an inch, quarter of an inch or less, within the tread area of the tire, they can be repaired properly if they're demounted and examined to make sure that there's no internal damage to the tire. You can have internal damage to a tire, for example, if the owner of the car runs it consistently underinflated, or if it's been damaged in some other nature. So, under certain circumstances, tires can be repaired, whether they're conventional or run-flat. That is true with respect to the tires in this class. But that's an individual issue, just like causation, that requires individual proof. And is one of the reasons why... That's very well, but we cannot take this in vacuo because we have a situation where BMW does not permit the use of a repaired tire on a BMW. You have to buy a new tire. Your Honor, I won't... We can't just talk about it as if your client is the only defendant here. We cannot talk about theory. We have to talk about the practical aspects of this case. And the practical aspects, I would respectfully submit, Your Honor, is that the defendants need to be considered individually. The plaintiff conflates the defendants as if they were one. But the law does not permit that. This is not a case of joint and several liability. The liability of Bridgestone or Bateau is determined independent of the liability of BMW and independent of one another. And... Isn't that perhaps the big argument you're going to make when you get before a discussion of a fact finder, whether it's a jury or a judge, on the merits of the issues? Certainly the argument would... I'm sorry, Your Honor, I didn't mean to get in the way. What we're talking about here is the question of the propriety of certifying this as a class action. That is correct, Your Honor. And the issue of the separateness of the defendants also goes to the Rule 23 requirements and Rule 23 questions of commonality, typicality, predominance, et cetera. For example, with respect to the choice of law argument, the Court never found that New Jersey law could properly be applied to either Bridgestone or Bateau. The law specifies, Georgine and other cases, that the choice of law determination must be made defendant by defendant and claim by claim. The District Court failed entirely and abused its discretion by presuming here that New Jersey law would predominate based solely upon the definition of the class and without any analysis or any knowledge with respect to the actual makeup of the class. How do you... Maybe it's not your question, maybe it's, I don't know, it's for your co-counsel there, but how do you reconcile the New Jersey Supreme Court's rulings in the International Union and Lee with respect to the presumption of causation? I mean, when should it apply under New Jersey law and when should it not? I think that the New Jersey Supreme Court opinion that Your Honor has identified demonstrates precisely the argument that we are making here, which is that merely arguing that the course of conduct of the defendants is the same is not conclusive with respect to the question of predominance, that you have to understand the interaction between the alleged conduct of the defendant and the plaintiffs. And where that is inherently individual, as is the same in this case. As to the presumption, I think that the presumption can only apply in circumstances that are clearly cohesive, clearly uniform, under circumstances as in Vericalo. You had there a vanishing premium insurance case in which the court made clear that the presentations were uniform to the purchasers, that they had uniform omissions, that there was no other source of information, and that they all made an immediate purchase decision following those presentations. And they were suing there for the cost of the insurance. There the court presumed that causation could be established. But it also made clear that the presumption is rebuttable, meaning that the defendant is entitled to go seek evidence, and where it can show that the causal connection doesn't, isn't properly established. So your argument is that you need an individual inquiry? Absolutely, Your Honor. All right. Why don't we hear from Mr. Dalton, and then we'll get you back up and rebuttal. Thank you. Good afternoon, Your Honors. My name is Christopher Dalton from Buchanan, Ingersoll, and Rooney in Newark, New Jersey. I represent the defendant, BMW of North America. As Mr. Whiting, excuse me, I'd like to reserve two minutes for rebuttal, if that would be okay with the court. As Mr. Whiting noted, we've tried to divide our arguments today so as not to duplicate what we argued to the court. I do think that there's one question that Judge Aldisert asked regarding the repairability of tires, and I think that Mr. Whiting touched on that as well. There is no prescription on repairing tires, and the record is absolutely clear on that. There is a recommendation from BMW of North America. These are high-performance vehicles. No tire, run flat or conventional, should be repaired, and the company has taken that position for decades because once a tire has been damaged, as you gentlemen noted, it's not going to be repaired. The integrity is no longer there, and the company doesn't want that liability. At the same time, if Mr. Marcus had chosen to take his tire to Joe's Exxon on the corner, and Joe said, I can put a plug in that tire, there's nothing that BMW of North America or anyone else can do to prevent him from doing that. This is simply a recommendation that's made for the safety of the consumers, but that's a fact issue. What I'd like to address – Did the district court make any finding of fact with respect to the discoverability of the defects? With regard to the discoverability, I think the district court sidestepped the defect issue. I don't think that we had before the district court. Mr. Gold made a stiffness defect theory that the plaintiff then backed away from and actually said several times, Mr. Gold was not proffered to offer an opinion on a defect, just that, as he said in his report, these tires are all similar. They're round and they're black, and if there is something wrong with them, then they might come across all classes, but there's no evidence as to a defect, and that defect issue is critical to a variety of facts in this case, as Mr. Whiting was hitting on. Mr. Gold, Mr. Quiser, Mr. Gardner, all of the tire experts who were proffered on class certification, all testified and all agreed, even if you have a defective tire, that doesn't mean that the tire went flat because of the defect. Mr. Whiting pointed to Mr. Marcus's tires. Through the miracle of modern computing, I put pictures of Mr. Marcus's tire in our brief. There's a large chunk of metal. That would have destroyed any tire. Did that tire go flat? Did Mr. Marcus suffer a loss because of the defect? No, he suffered a loss because he hit something. Your Honor asked a question about the supposed nondisclosures. Mr. Marcus has defined his class as persons whose tires have gone flat and been replaced, so the only way that any individual in this class could have suffered a loss, could have been harmed by the alleged nondisclosures, is if he or she suffered a flat and the tire, suffered a damage and the tire went flat. But the problem with that is, no one sitting here, the plaintiff, myself, Mr. Whiting, can conjure up those people and determine who had a tire that went flat. There's no requirement that you take your vehicle to BMW dealerships. We can't ascertain the class. I guess that goes to your, you argue that the New Jersey class is not objectively ascertainable? Yes, Your Honor. Well, I mean, don't you have records of folks who purchased or leased BMWs over this relatively short time period? Now, I understand, the used car, another one, that's a different story altogether. Right, and that's part of the problem with the class definition. The court didn't define the class definition in either the opinion or the order, which clearly violates Wachtell and hydrogen peroxide's directives, the courts do that. But, yes, even if we can determine canvas dealer records and if the class is presumed to be original purchases from a BMW dealer, who are independently owned and operated, but let's say we can get that information, Judge, every vehicle that was sold from a BMW dealership that was a 2005, or excuse me, 6 through 2009 vehicle. Unfortunately, we don't know which of those vehicles had They're made in Germany by a different company. We don't have a parts manifest, but even if we could get to that point. Isn't that a question for the fact finder? Not before us now, isn't that for, you're saying a defense? Well, that's a defense in a fact finding procedure. Here we're talking about the certification of a class. Yes, Your Honor. Even with this, I have to judge Alastair. It's right. I mean, a lot of your briefs also read as if we're dealing with this case on the merits. I mean, we're dealing with a class certification and whether it's an abuse of discretion. I mean, that's what we ought to be focusing on. Well, I don't think it's a question, Your Honor. I'm sorry. I don't think it's a question of fact. Let's assume that we knew all of this. We have records of every BMW vehicle sold during the class period initially from a dealership with Bridgestone run flat tires. We still can't get to that issue of identifying objectively whose tires went flat and had to be replaced. And that is an upfront question that needs to be addressed at the class certification stage. Plaintiff recognizes the hole in their class definition. We have to have that there in order to have the loss necessary for all of their claims. They suggest in their opposition brief, well, what we'll do is we'll find those folks who had purchased or leased originally from a New Jersey dealership, and we'll send them all a notice. And we'll ask them each to say, did you have Bridgestone run flat tires? Did they go flat? Did they have to be replaced? That's an opt-in class. This is 23B3. This is not an opt-in class. This is opt-out. We're going to have to have an individualized fact-finding hearing at the class that requires. Thank you, Your Honor. Thank you. We'll get you back on rebuttal. Ms. Fish? Good afternoon, Your Honors. May it please the Court, Karen Fish from the law firm of Abbey, Spanier, Rod, and Abrams on behalf of Appellee Jeffrey Marcus. Let me ask you at the outset, who fits this class definition? As I look at it, it appears to include not only owner's lessees who bought or leased a new or used BMW from a New Jersey BMW dealership, but also subsequent owners or lessees, regardless of where they live, who bought or leased a used BMW in New Jersey from anyone, not just BMW dealers. It could have been from another owner. And it would even include possibly subsequent owner's lessees, regardless of where they live, who bought or leased a used BMW anywhere in the country from anyone whose BMW was, as long as the BMW was originally or initially bought or leased in New Jersey. I mean, does it cover all of those? Your Honor, it sounds like you're reading from the BMW Defendant's Reply Brief, where they made that very argument. And my answer to your question is, to the extent that there is any question regarding the exact parameters of the class, those purported ambiguities can be worked out at the district court level. We don't believe that any ambiguity in the court's decision... But on appeal, I mean, you have to have an ascertainable class from the get-go. Yes. And my question is, does this include these three sets? Our intent, Your Honor, was to include in the New Jersey class all purchasers or lessors of new BMWs that utilized Bridgestone run-flat tires as original equipment from BMW dealers in the state of New Jersey. So you're not interested in used cars as second owner? No, Your Honor. Okay. So how does the actual definition read? The definition of the class, I believe, is exactly as I just stated, which is all purchasers or lessors of BMW vehicles that utilize the tires from dealerships in the state of New Jersey. So if they move elsewhere, then what happens? If they move elsewhere... And let's say one of those people sells a BMW to me with an RFT on it. I guess they all have RFTs. Am I in the class? Our intent was only to include the original purchaser. And not lessee? Not lessee. Well, yes. Yes, lessees are included in the class definition so long as they lease directly from BMW. It would have to be lessee because it wouldn't include Mr. Marcus otherwise, right? Yes. Your question, though... So this is something that if the suit continues, Judge Hayden is going to have to clarify that a little bit with regard to second-hand owners. I believe that's correct. So New Jersey law... First of all, you're saying it doesn't include what I said in two and three. You're talking about only original owners and lessees of BMWs that were purchased in New Jersey. Purchased or leased in the state of New Jersey. Purchased or leased in New Jersey, okay. I'd like to just take a step back, and in answering your question, I was going to allude to the standard of review that we're operating under here. And I know it's easy to get up here on an abuse of discretion case and mimic what Your Honor's said to my adversary, but I'm standing here with Judge Aldisert's recent decision written as of August 23, 2011 in the Barron v. Comcast case, where he lays out the standard for an abuse of discretion on a class certification motion. Judge Aldisert was kind enough to cover for me because I ended up being recused in the case. I was a member of the class, which I didn't even know. I'm sorry, Your Honor. I don't need to read from the decision, but as you're aware, the standard here is extremely high. And what I read in the defendant's briefs and what I heard today was a regurgitation of arguments that were made before the district court, an attempt to re-argue facts that were rejected. I think the job of this court is to look at what the district court did and determine whether there was an erroneous, clearly erroneous finding of fact, an errant conclusion of law or an improper application of the law. Just looking at it from 10,000 feet, the problem is that with the changes to Rule 23 under the rule amendments in 2003, and in light of hydrogen peroxide, there is a narrowing of those who otherwise would fit under eligible class actions. And your opponents have brought up a number of issues here that would seem to call into question whether the dictates of hydrogen peroxide and also Comcast and others were really followed. I mean, just for example, on numerosity. I don't believe that Mr. Marcus submitted any evidence of the existence of any owner or lessee of a 2006 through 2009 BMW with Bridgestone RFTs that were sold in New Jersey that have gone flat and been replaced other than himself. Is that correct? Your Honor, I mean, there were two ultimate claims of people that I saw and they had items in the tire that would have gone bad with any tire. With respect to numerosity, as with respect to any element of Rule 23, I believe the standard under hydrogen peroxide is whether it's more likely than not that plaintiff would be able to satisfy his burden. And with respect to numerosity, as with respect to all of the common proof of each of the elements of Rule 23, included in the evidence that the Court considered with respect to numerosity were complaints received by BMW. Bridgestone doesn't keep track of complaints, so there were no documents from them. The Court also considered So BMW had, what, 582 customer contacts? Customer contacts. And how many of them complained about the RFTs and said that they had flats? I don't have the number off the top of my head, but I know that the District Court did have that information before it and considered it in ruling that plaintiffs had in fact established that it was more likely than not. Roughly how many? Or was it more than how many? I think that it was difficult to parse through the data because some of the complaints didn't specify whether they were complaining about run flats or specify whether they were complaining about Bridgestone run flats. But the Court also did consider loss ratio data that was exclusive to BMW, which was filed under seal in a supplemental appendix, which was data from insurance companies establishing that BMWs had the highest loss ratio from insurance companies. But even the two people who were identified by Mr. Marcus, we don't know if they actually bought or leased their cars in New Jersey, do we? I believe that Your Honor inquired as to whether those records existed, BMW, and I don't think that we got a straight answer as to whether or not documents can be produced showing the names and addresses. But then how do you satisfy the numerosity problem? The District Court satisfied it by saying we have to, the minimum is 40. And then the information before us now, I'm suggesting that there's going to be more than 40. Am I correct? Yes, Your Honor. Is that? I believe that the words that the District Court used were considering all of the evidence that was placed before it. It was common sense that there would be more than 40. Is that the searching reviews that hydrogen peroxide calls for? I think more likely than not in common sense are similar, although not exactly the same. But I will tell you that... I mean, that sounds like I'm in the barbershop and I'm saying, I'll bet you there's more than 40. The defendants did argue below that the complaint data was dispositive and the District Court reasoned properly that not everybody that has a flat tire or has a complaint about a run flat tire is going to register that complaint. So she used the complaint data as a baseline and basically held that it's more than likely that there's more than 40 people within the State of New Jersey who leased BMWs or owned BMWs during the period from 2006 to 2009 that suffered the same injury that Plaintiff suffered. And she based that finding on, again, the complaints as a baseline, the loss ratio data, and BMW's own statement that the class could be in the thousands or the tens of thousands, and therefore they would be prejudiced by having to send out a notice. But shoulda, woulda, couldas don't satisfy the searching review that's needed. That's the problem. I don't believe on the numerosity issue that the Court said shoulda, woulda, coulda. I think that she analyzed the evidence that had been placed before her in the record regarding complaint data, loss ratio data, BMW's own statement, and found that it was more likely than not that the numerosity requirement had been satisfied. Well, let me take you to the biggest issue that's troubling me, the presumption of causation under the New Jersey statute. It says that a plaintiff must demonstrate a causal nexus between the alleged act of consumer fraud and the damages sustained. And if you look at the Lee case and the other cases that were cited, it looks to me as to presume that a cause of, you have a presumption of causation. You need a stable market of persons who react the same way. So you gotta presume that X causes Y. And I don't see that market being shown here of people who you've pulled together and said to the Court, these people, they had a consumer fraud and it caused their damage. There was information that was not given to them or kept away from them, and it caused them to have flat tires and incur these damages. Don't you have to have that? Yes, Your Honor, you do have to have that, and I believe that we do, and I believe that the District Court's conclusion that we do was... But to do that, you have to have a uniform group here. And I don't see a uniform group of people who have complained that they have bought these tires based on some type of misrepresentation and as a result of not getting information that they should have been given, that they have suffered damages. Your Honor, the District Court considered a similar argument, and I think if you look at the cases that were cited by the defendants and by the plaintiffs on this issue, there's a wide spectrum of facts that are presented in those cases. There are the cases like the McNair case. There are cases involving the drug companies and the PBMs who are choosing medications to include on their formularies, where the courts say, the facts are such in these particular cases that we will not presume causation. On the other end of the spectrum, there are cases like Mercedes-Benz and Varicalo and Elias, where the court says, here there's enough uniformity that we're going to presume causation. To the extent that the District Court considered all of those cases and made a determination where the facts of this particular case fall within that spectrum. I mean, Varicalo talked about, it was inconceivable that any class members knew of the alleged defects, which were inflated dividend rates and still purchased their insurance policies. It's plaintiff's position here that there is no way that class members knew of these defects. The information was not contained in the defendant's marketing materials. It was not contained in sales and training documents. There was a delivery guide. But how many people do you have who are making these actual claims other than Mr. Marcus? Mr. Marcus is seeking to be a class representative. Understood. But how many people are like he is, where he, one could argue, didn't ask any questions, but he claims he wasn't given any information with respect to these tires and that they had four blowouts in, I guess, three years, and it cost him a lot of money and to replace them. How many other people are like him who purchased their cars in BMWs from, or leased their BMWs from New Jersey BMW dealerships? Are you asking me for an exact number? No, roughly. I mean, is it more than 40? We don't even know. We assert that it's more than 40. I understand you assert, but do you have any evidence that it's more than 40? Our evidence, as I stated earlier, is loss ratio data, complaints, internal documents from BMW and Bridgestone stating that the biggest complaint about these tires are the very complaints that Mr. Marcus has registered. There's scores in the record of internal documents from both BMW and Bridgestone documenting customer complaints and stating these are the biggest problems that people are having with these tires. They are identical to the issues raised by Mr. Marcus in this case. And that's further evidence of numerosity. Back to Your Honor's question regarding causation, the district court analyzed all of the cases cited by the defendants and distinguished them. The district court determined that the facts of this particular case are more analogous to the cases where there were uniform omissions in company documents. I don't believe that it can be shown at an appellate level that a district court's determination that the facts of this case are more analogous to the facts of one set of cases versus another is an abuse of discretion. If the district court had made some broad pronouncement that whenever there is a common course of conduct, there is a presumption of causation, perhaps that would have been problematic. If the case law said there can never be a presumption of causation and the court here said there is one, that would have been problematic. But there are cases allowing for a presumption of causation. The district court properly analyzed the facts and found that those cases applied. We believe that that argument is applicable to all of the defendants' arguments on this appeal. With respect to choice of law, Your Honor, in the Cooper v. Samsung case, recently we found that the choice of law analysis is not always so easy and where two judges said that the law of Arizona applied, you respectfully dissented and sent the case back to the district court for a choice of law analysis stating that New Jersey law may apply even to non-residents given New Jersey's broad consumer protection statutes. That case was pretty much confined to its facts. It was confined to its facts, Your Honor, but I think that that's what's important here. The district court did a choice of law analysis. The defendants may disagree with the conclusion, but certainly they can't argue that the conclusion that New Jersey law was applicable is an abuse of discretion. And finally, on the defect issue, again, we believe that defendants have not met the abuse of discretion standard. The district court on more than one occasion in its opinion on I believe it's page 19 of its opinion and on page 24 weighed defendants' defect theory against the pile of internal documents that plaintiff produced establishing common proof of not only a defect, but also of an unmerchantable product, a lack of disclosure, all of the But even on that, you know, in hydrogen peroxide, we said that the court has to consider the Yes, and I believe in hindsight it's very difficult to pick apart any district court's opinion in light of hydrogen peroxide, but I think ultimately the court implicitly considered It doesn't have to do so explicitly? I believe that it did explicitly here I mean, I didn't write hydrogen peroxide, but I was on the panel It acknowledged that the defendants had a defect theory or that the product is not defective and properly weighed it against the evidence adduced by plaintiff and submitted to the court and found that it was more likely than not that plaintiff would be able to prove his case based upon common proof. We believe that I see my time is up, so I'll just sum up. We believe that the district court followed hydrogen peroxide, did an appropriate analysis. We don't believe that quibbling about the facts or disagreement with the court's opinion below rise to the level of an abuse of discretion. Thank you very much. Thank you, Your Honors. Mr. Whiting. Could you address the numerosity issue? Maybe I'm off base. Well, Your Honor, as our briefs indicate, we don't believe that the plaintiffs or the district court satisfied the requirements of hydrogen peroxide in terms of the showing required on numerosity. The conclusions that the court made with respect to the nationwide class that ultimately was not certified were predicated on the court's view of 196 out of 582 BMW customer contacts that actually identified Bridgestone tires. I would submit that that was the sole evidence before the court from which any inference of numbers could be drawn, and that that evidence may have been appropriate for purposes of finding at least 40 members in a nationwide class. As to the New Jersey class, the plaintiff proffered no specific evidence. There was no evidence before the district court, and the evidence that was before the district court does not provide a basis on which to know whether or not the New Jersey class, as certified, has one member, Mr. Marcus, two, 20, or more than 40. There was a failure under hydrogen peroxide to find numerosity based on a predominance of the evidence. What is the standard of review that we use here on this particular issue? I think that the standard of review, Your Honor, is whether or not the court abused its discretion, which can occur when there's a clearly erroneous finding of fact, an error of law, or a misapplication of law to the facts. With respect to numerosity, I think it is both clearly erroneous and a misapplication of the requirements of hydrogen peroxide, the law of this circuit, to the facts or circumstances and evidence in this case. I see. Thank you. I'm sorry, Your Honor. He said, I see. Thank you. I want to go to, first of all, the statement that the plaintiff has made about scores of documents. I invite the court to look at the documents cited by the plaintiffs in their report. I invite the court to look at the Berger report, which is the only document from Bridgestone that the district court referred to. It's a 106-page report. The plaintiff contends that the issues a plaintiff has complained about are prominently noted in that document in its brief. There are two references to repairability on pages 27 and 28 in single lines in that document. There is nothing in that document to suggest that the tires in this case are defective. There is nothing in the document that bears upon anything else that's relevant to this case. The reality is, and specifically with respect to predominance and the court's reliance on the so-called stiffness defect theory, when we look at hydrogen peroxide, not only do we contend that the court failed to consider the evidence from experts, but that this finding was clearly erroneous. Mr. Gold recanted his testimony. The stiffness defect theory is without evidentiary support. Mr. Gold recognized that and admitted that in his deposition. I submit it is a clear abuse of discretion for a trial court to make a linchpin of its predominance finding, an expert opinion from one line of a report that has been abandoned by that expert, recanted in testimony, and abandoned by the plaintiffs. It is clearly causation. Causation is an inherently individual question here based upon what actually caused a flat tire. Defect was critical because it is the only way you could have common proof, and the court simply was clearly erroneous on that issue. For that reason, we respectfully submit that the district court's decision should be reversed, and we ask the court to remand with instructions to dismiss the class action allegations. Thank you. Mr. Dalton. Thank you, Your Honor. Ms. Fish clarified that the class now is limited simply to new vehicles leased or purchased in New Jersey. That doesn't eliminate the necessary choice of law inquiry that has to be conducted at the front end, and I think it was the fellow on top of City Hall down the street said a couple hundred years ago, New Jersey's a barrel tapped at both ends. Mr. Marcus himself came from New York and purchased his vehicle in New Jersey. Your Honors, you're sitting here. There are a couple bridges over the Delaware. There may well be people from Pennsylvania, people from Delaware who came to New Jersey to purchase vehicles. But if you narrow it in the way that Ms. Fish is saying, doesn't that resolve your problem? No, Your Honor, because under New Jersey law, you have to conduct the most substantial relationship test as enunciated in PV against Camp JC. That requires that the court look at the law of the other states, determine if there is a conflict, and then if there's a conflict, weigh the various factors under Section 148 and Section 6. I mean, it may be a lot of work, but let's suppose the court does it and ultimately determines that purchasing a car in New Jersey, you apply New Jersey law because you're attempting to take advantage of a New Jersey statute. And also, isn't the choice of law in the actual purchase documents that New Jersey law applies? No, Your Honor. Mr. Marcus leased his vehicle from a BMW dealership. He signed a lease with BMW Financial Services. They are not a party to this action. And that choice of law provision governs whatever dispute he may or may not have with BMW Financial Services. So what is that choice of law here? The choice, there is no choice of law here, Your Honor. There is none. There's no uniform sales contract that contains... So if there is no choice of law, and you purchased it in New Jersey, I mean, what's to stop a court from doing the substantial context test under the Restatement Second and ultimately concluding with respect to however many you have that New Jersey law does apply? How do you know what other states' law conflicts? Well, you would make the argument that they do or they don't. If the court makes the analysis and finds that they do not conflict, or if they do conflict, New Jersey has a more substantial relationship than the other states. But you can't do that in a vacuum, Your Honor. Think against... Now, once you identify who the people are. Once you identify who these people are, sure, okay, then you make that determination. I agree, you can't do it in a vacuum. But we don't know who they are, and we can't know who they are until we go through that whole process that the plaintiff suggested we do, to have people opt into this class. It's simply untenable and it can't be certified. Thank you very much. Thank you, Your Honor. Thank you to all counsel for very well presented briefs, very well presented arguments. And I would ask if counsel would get together and go to the clerk's office and have a transcript prepared of this oral argument, if possible, within the next week to ten days, thereabouts. Thank you very much. We'll take the matter under advisement and call our last case at the...